IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TAREZ GORDON, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 5:23-cv-304-TES-CHW |
| v. : | |
| : | |
| BARNHART, *et al.,* : | |
| : | Proceedings Under 42 U.S.C. § 1983 |
| Defendant. : | Before the U.S. Magistrate Judge |

### REPORT AND RECOMMENDATION

Plaintiff Tarez Gordon, a state inmate, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding his confinement in the Special Management Unit at the Georgia Diagnostic and Classification Prison in Jackson, Georgia. (Doc. 1). Defendants Corey Barnhardt[1] and Corey Abrams filed a motion to dismiss, arguing that Plaintiff has failed to exhaust his administrative remedies. (Doc. 15). In response, Plaintiff filed a declaration laying out his version of facts related to exhaustion. (Doc. 21). Because the record before the Court shows that Plaintiff failed to exhaust the available remedies before bringing this action, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** and that Plaintiff's claims be **DISMISSED**.

1. **Background**

Plaintiff brought this action on August 14, 2023, alleging constitutional violations regarding his incarceration in the Special Management Unit (SMU). (Docs. 1, 7). Following screening of Plaintiff's complaint under 28 U.S.C. § 1915A, the Court allowed Plaintiff to proceed on his excessive force claim against Defendant Barnhardt and failure to intervene claim against

---

[1] This Recommendation uses the spelling from Defendants' motion to dismiss.

1

Defendant Abrams. (Doc. 7). These claims stem from an incident on June 30, 2023, when Plaintiff alleges Defendant Barnhardt sprayed him "with multiple extended bursts of chemical agent without any prior warning." (Doc. 1, p. 5). Plaintiff further alleges that Defendant Abrams was present and had the ability to intervene but failed to do so. (*Id*).

Defendants move to dismiss Plaintiff's complaint because Plaintiff did not properly exhaust his administrative remedies before bringing suit. (Doc. 15). In his complaint, Plaintiff states that he submitted a grievance on June 21, 2023, that was never recorded. In his declaration, Plaintiff states that he submitted a grievance on July 15, 2023, that was never recorded.[2] (Doc. 21, ¶ 7). Plaintiff did not file a Central Office Appeal. (Doc. 1, p. 4).

2. **Failure to Exhaust**

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed 'to eliminate unwarranted federal-court interference with the administration of prisons'" by "'seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (quoting *Woodford*, 548 U.S. at 93).

---

[2] Plaintiff contends that grievance coordinator Alexander Tillman, not named in this lawsuit, has a policy of refusing to give a reference number to approximately 60% of submitted grievances, so that the grievances are not recorded or processed. (Doc. 21, ¶ 6).

2

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner*, 541 F.3d at 1082. Second, if the complaint is not dismissed under step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1082–83 (internal citations omitted). As failure to exhaust is an affirmative defense under the PLRA, "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.*

The grievance procedure applicable in this case is set by the Georgia Department of Corrections Standard Operating Procedure No. 227.02 (Doc. 15-2, attachment 1). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within 10 days of the grievable issue. (*Id.* at 8).[3] Prisoners may file outside of the 10-day window if they show good cause. (*Id.*). The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (*Id.* at 9). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (*Id*. at 11). Once the prisoner receives the warden's response, or when the time allowed for the warden to respond expires without a response,

---

[3] The referenced page numbers cite to the policy itself and not the document to which the policy was attached.

the prisoner must proceed to step two by filing a "Central Office Appeal" within seven days. (*Id.* at 14). The grievance procedure then contemplates a 120-day period in which the Commissioner may give a response. (*Id.* at 15).

In considering whether dismissal for failure to exhaust is appropriate, under *Turner*'s step one the Court must first consider all the alleged facts, construed in favor of Plaintiff when the facts conflict. In his original complaint, Plaintiff acknowledges that SMU has a grievance procedure and claims that he submitted a grievance to the appropriate staff member on June 21, 2023,. (Doc. 1). In his declaration in response to the Defendants' motion to dismiss, Plaintiff asserts that he submitted a grievance on July 15, 2023, to an "officer/counselor M. marsha [sic]" that was never recorded. (Doc. 21, ¶ 7, 8). Although Defendant argues that Plaintiff never submitted a grievance relating to this incident, *Turner*'s step one requires the Court to take Plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. While the exhaustion analysis could end at step one, Plaintiff's complaint would still be dismissed under *Turner*'s second step, where any disputed facts must be examined to determine if the administrative remedies were available and, if they were, whether Plaintiff exhausted those available administrative remedies prior to filing suit.

The PLRA requires exhaustion *prior* to filing suit. 42 U.S.C. § 1997e(a). The filing of Plaintiff's complaint serves as the marker for when a plaintiff is required to have completed exhaustion of available administrative remedies as required. *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000). In *Harris*, the Eleventh Circuit, sitting *en banc*, considered what the word "brought" means in the context of the PLRA requirements and an amended complaint. The Court concluded that "'brought' means 'commenced.'" *Id*. at 974. Amending or supplementing the complaint attempting to show exhaustion which was not complete when the action commenced will not suffice to meet the exhaustion requirement. *Id*. at 982–984 (discussing FED. R. CIV. P. 15 and other

4

examples of where amendment will not cure jurisdictional requirements needed to bring suit). Pursuant to *Harris*, the entire administrative process, from initial grievance to the appeal outcome, needed to have been completed before Plaintiff filed this action on August 14, 2023. (Doc. 1).

Based on his own allegations, Plaintiff did not properly exhaust at all, must less *prior* to filing suit. If it is accepted as true that Plaintiff filed a grievance on July 15[4] concerning the incident alleged to have occurred on June 30, SOP No. 227.02(IV)(C)(1)(b) clearly states that "[g]rievances filed later than ten (10) days may only be considered upon Good Cause." (Doc. 15-2, p. 8). Plaintiff would have filed the grievance more than ten days after the incident, and he has failed to point to any evidence in the record that he provided good cause. Further, again accepting the complaint as true, Plaintiff failed to wait the forty days allowed to the Warden/Superintendent to deliver a decision before he initiated the present suit. *See* (Doc. 15-2, p. 11). If the grievance was filed on July 15, 2023, the Warden/Superintendent had until August 24, 2023, to give a response. Under the grievance procedure, Plaintiff must wait until a decision is rendered or the forty days expires before he may file an appeal. (Doc. 15-2, p. 14). Plaintiff would then have seven days from the expiration or decision to file a "Central Office Appeal." (*Id.*). The Commissioner then has 120 days after submission of the appeal to deliver the decision. (*Id.*). Plaintiff filed this lawsuit on August 14, 2023, prior to the running of the forty-day grievance response period and prior to any appeal stemming from a lack of decision. (Doc. 1).

---

[4] In his initial complaint, Plaintiff states, "On 6-21-2023 I submitted an institutional grievance to the appropriate staff member citing use of excessive/un-necessary use of force in accordance with the Statewide Grievance Procedure." (Doc. 1, p. 3). Step one of *Turner* requires the Court to take this as true because Defendant contends that no grievance concerning these facts was ever filed. *See* (Doc. 15-1). It is impossible to accept this assertion as true, however, because June 21 was nine days before the incident allegedly occurred. Plaintiff could not have filed a grievance concerning the incident before the incident occurred.

The Eleventh Circuit has specifically rejected any argument that pursuing the full grievance process would have been futile because Plaintiff had not received a timely response to his grievance by the time he filed suit. In *Garcia v. Obasi*, the plaintiff argued that prison officials essentially waived an exhaustion defense because they had not complied with grievance policy deadlines. *Garcia v. Obasi*, 2022 WL 669611, *4 (11th Cir. March 7, 2022) (citing *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000)). The court found that the warden's failure to provide a timely response did not make a central appeal unavailable. *Id*. The *Garcia* Court reiterated that exhaustion of the grievance process—from submission of a formal grievance through appeal to the central office—was a precondition before filing suit under the PLRA. *Garcia*, 2022 WL 996611 at *5; *see also Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners 'must properly take each step within the administrative process.'") (internal citations omitted)).

The pleadings, construed in Plaintiff's favor, establish that Plaintiff failed to exhaust his administrative remedies prior to filing suit. Plaintiff initiated this lawsuit prior to the expiration of the forty-day original grievance period and the time required to appeal, and as such, he did not properly exhaust his administrative remedies.

Even if Plaintiff's complaint and declaration were read to suggest that the grievance process was unavailable to him, Plaintiff's claims would fail under step two of *Turner* because Plaintiff failed to exhaust his *available* administrative remedies prior to filing suit. At *Turner*'s second step, any disputed facts must be examined to determine whether Plaintiff exhausted the available administrative remedies prior to filing suit. In support of their motion to dismiss, Defendants provided the grievances that Plaintiff filed while at SMU, Plaintiff's grievance history, the applicable grievance policy, and a declaration from Alexander Tillman, the grievance

6

coordinator at SMU. (Doc. 15-2, exhibit A). Plaintiff appears to argue that the grievance procedure was unavailable to him because the grievance coordinator "destroyed" his July 15, 2023, grievance. (Doc. 21, ¶ 7, 8). Defendants dispute that Plaintiff filed any grievance relating to the alleged use of force on June 21, 2023. *See* (Doc. 15-1).

The evidence presented by the parties shows that Plaintiff filed the following grievances while in the SMU:

Grievance No. 356271: Plaintiff filed Grievance No. 356271 on July 16, 2023, regarding a July 15, 2023, allegation that officer McCoy used unnecessary force in "spraying [Plaintiff] directly in [his] face with extended bursts" until the can was empty. (Doc. 15-2, attachment 4). As of August 22, 2023, the grievance had been referred to CID. (*Id.*). The record does not provide the results of the CID investigation.

Grievance No. 358134: Grievance No. 358134, filed on February 13, 2023, alleged that Plaintiff had not received regular meals, adequate fluids, and recreational time since January 230, 2023. (Doc. 15-2, attachment 5). Plaintiff dropped the grievance on September 21, 2023. (*Id.*).

Grievance No. 335966: Plaintiff filed grievance No. 335966 on January 17, 2022, and stated that officers had failed to put out a fire in E-wing and refused to take Plaintiff to medical after he complained of check pains. (Doc. 15-2, attachment 6). Plaintiff dropped the grievance. (*Id.*).

Grievance No. 334470: Plaintiff filed grievance No. 334470 on January 7, 2022, alleging that an officer struck him in the face with a hammer on December 28, 2022. (Doc. 15-2, attachment 7). Plaintiff dropped the grievance. (*Id.*).

None of the grievances listed above concerns Plaintiff's allegations of excessive use of pepper spray by Defendants Barnhardt and Abrams on June 30, 2023.

Although Plaintiff does not appear to respond directly to Defendants' failure to exhaust argument, he does state that he complied with the grievance procedure. (Doc. 21, ¶ 7). Plaintiff's complaint and declaration, read liberally, appear to argue that any failure to exhaust should be excused because the grievance process was unavailable due to the grievance coordinator's "policy" of destroying grievances. (Doc. 21, ¶ 5–8).

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner*, 541 F.3d at 1084 (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–23 (11th Cir. 2007). Once a defendant shows that an administrative remedy is available, "the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quotations and citations omitted). Courts have outlined three different ways a plaintiff can show that administrative remedies are unavailable:

> The modifier "available" means that an administrative remedy must provide the possibility of some relief. *Id.* at 643. There are three kinds of circumstances that make an administrative remedy unavailable. *Id.* First, an administrative remedy is unavailable when the administrative procedure operates as a simple "dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Id.* For example, if a handbook required inmates to submit grievances to a particular office and the office disclaims the capacity to consider petitions or if

8

> officials have authority but decline to exercise it, then it is unavailable. *Id.* Second, a remedy is unavailable when an administrative scheme is so opaque that it is incapable of use. *Id.* The mechanism may exist to provide relief, but no ordinary prisoner can discern or navigate it. *Id.* at 643–644. Third, a remedy is unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, and intimidation. *Id.* at 644.

*McDowell v. Bowman*, 2022 WL 4140331, at *3 (11th Cir. Sept. 13, 2022) (citing *Ross v. Blake*, 578 U.S. 632 (2016)). Defendants carried their burden by pointing to the GDC's two-step administrative process. (Docs. 15-1, 15-2). Plaintiff has failed to carry his burden because he has not shown that SMU's grievance procedure was both subjectively and objectively unavailable.

Plaintiff's suggestion that prison officials have denied him access to grievance procedure by refusing to process them seemingly fall under the first and third *Ross* exceptions. The record, however, does not support a finding that SMU's grievance procedure was unavailable. Plaintiff admitted that DSP had a grievance process. (Doc. 1, p. 3). As to the first *Ross* exception, Plaintiff does not support any argument that this process operated as a dead end. As discussed above, Plaintiff has used the grievance system four (4) times since his arrival at SMU. (Doc. 15-2, attachment 2). Plaintiff voluntarily dropped three (3) grievances. (Doc. 15-2, attachment 2). His most recent grievance was filed on July 16, 2023—the day after he claims to have submitted the grievance concerning Defendants Abrams and Barnhardt (Doc. 21, ¶ 7)—and concerned an alleged use of pepper spray the previous day. (Doc. 15-2, attachments 2, 4). As of August 22, 2023, the grievance had been referred to CID. (Doc. 15-2, attachment 4). Voluntarily dropping all but one grievance, and having the remaining referred for further investigation, does not establish that the grievance procedure at SMU operates as a dead end.

As to the third *Ross* exception, Plaintiff states that the grievance coordinator "has a policy of denying inmates housed at the S.M.U. access to the grievance procedure by refusing to give

approximately 60% of grievances submitted by inmates any reference number, so that these grievances are not recorded[,] are not processed, and are destroyed by [the grievance coordinator] to cover up staff misconduct at SMU." (Doc. 21, ¶ 6). In *Ross*, the Supreme Court recognized several examples from other courts of what may represent unavailability caused by "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644, n.3. These examples include cases where staff members mislead an inmate as to the rules or existences of a grievance process to make the inmate fail to exhaust, where an inmate is prevented by threats from seeking an administrative remedy, or where staff members play "hide and seek" with administrative remedies. *Id.* The Eleventh Circuit has explained that for intimidation or threats to make the grievance process unavailable, Plaintiff must show that "(1) the threat actually deterred the inmate from lodging a grievance or pursuing part of the grievance process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Montalban v. Samuels*, 2022 WL 4362800, at * 2 (11th Cir. Sept. 21, 2022) (citing *Turner*, 541F.3d at 1085).

Plaintiff states that prison staff thwarted him from filing four (4) grievances since February 1, 2023, by refusing to process them. (Doc. 1, p. 3). There is no support for this assertion in the record. Plaintiff provides no specific dates or identifying details about the incidents, except for the incident at hand, underlying the alleged missing grievances. Also undermining Plaintiff's argument that his grievances were not processed is the fact that the four grievances in his SMU grievance history are recorded as being dropped by Plaintiff or referred to CID. *See* (Doc. 15-2). Plaintiff's allegation that Tillman destroyed or refused to process his grievance in this case – alleging an improper use of pepper spray by Officers Barnhardt and Abrams on June 30, 2023 – is not credible given evidence that grievances were accepted and processed as to an improper use of

10

pepper spray by Officer McCoy on July 15, 2023, and as to an excessive use of force by an unnamed officer who allegedly struck Plaintiff in the face with a hammer on December 28, 2021. Nothing in the record suggests that Plaintiff was deterred from filing a grievance or that a reasonable inmate would have been deterred. Rather, the record supports that the grievance process was available to Plaintiff because he filed a grievance concerning a similar use of alleged force less than a month after the grievance coordinator allegedly destroyed the one at issue. Based on the record before the Court, the grievance process was available to Plaintiff, and he is not excused from the exhaustion requirement.

## CONCLUSION

Because Plaintiff failed to exhaust the available remedies as required before bringing this action, it is **RECOMMENDED** that Defendants' motion to dismiss (Doc. 15) be **GRANTED** and that Plaintiff's claims be **DISMISSED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions

if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 4th day of October, 2024.

                                                s/ Charles H. Weigle
                                                Charles H. Weigle
                                                United States Magistrate Judge